DENNIS LOFTUS, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, AND JOHN HOH, KENNETH CARROLL, ANTHONY GRAU, AND ANGELO FERRARO, FORMER TRUSTEES OF THE BREWERY WORKERS PENSION FUND, RESPONDENTS

Docket Nos. 12440-85R—12444-85R.     Filed May 9, 1988.

---

[1]The cases of the following petitioners are consolidated herewith: Dennis Loftus, docket No. 12440-85R; Brewery Workers Pension Fund by Rocco F. DePerno, Paul F. Bush, Jack Canzoneri, T. Edward Nolan, Curtis Gunderson, and Richard Muller, docket No. 12441-85R; Lawrence Wheat, docket No. 12442-85R; William Pryzlucki, docket No. 12443-85R; and Earl LeClair, docket No. 12444-85R.

*Robert Whoriskey* and *Lawrence V. Kelly*, for the petitioners.

*Sarah Hall* and *Daniel Wiles*, for the respondent Commissioner.

*Susan Martin* and *Jacob Friedman*, for the respondent former trustees.

## OPINION

NIMS, *Judge*: These cases were heard by Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7456 of the Code.[2] The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

PANUTHOS, *Special Trial Judge*: Petitioners, in these consolidated cases, brought actions for declaratory judgment under section 7476.[3] Petitioners in these cases are as follows:

| Docket No. | Identity | Relationship |
|---|---|---|
| 12441-85R | Brewery Workers Pension Fund by Rocco F. DePerno, Paul F. Bush, Jack Canzoneri, T. Edward Nolan, Curtis Gunderson, and Richard Muller | Trustees and plan administrator of the New York State Teamsters Conference Pension and Retirement Fund acting as successor trustees and plan administrator of the Brewery Workers Fund.[4] |

---

[2]These cases were assigned pursuant to sec. 7456 (redesignated as sec. 7443A by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1556, 100 Stat. 2755) and Rule 180. All section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]On May 13, 1985, petitions in 10 related cases were filed. On Oct. 9, 1985, we granted petitioners' motions to consolidate those cases into two groups of five cases each; one group consisting of docket numbers 12440-85R through 12444-85R, and the other group consisting of docket numbers 12445-85R through 12449-85R. We have filed on this same date our opinion respecting docket numbers 12445-85R through 12449-85R as *New York State Teamsters Conference Pension and Retirement Fund v. Commissioner*, 90 T.C. 862 (1988).

[4]Pursuant to a document entitled "Agreement and Plan of Integration," executed by the Teamsters Fund on July 30, 1973, and by the Brewery Workers Fund on Aug. 7, 1973, the

| Docket No. | Identity | Relationship |
|---|---|---|
| 12440-85R | Dennis Loftus | Covered participants |
| 12442-85R | Lawrence Wheat | in the New York State |
| 12443-85R | William Pryzlucki | Teamsters Conference |
| 12444-85R | Earl LeClair | Pension and Retirement Fund. |

Respondents in these cases are (1) the Commissioner of Internal Revenue (hereinafter the Commissioner) and (2) John Hoh, Kenneth Carroll, Anthony Grau, and Angelo Ferraro, all of whom are former trustees of the Brewery Workers Pension Fund (hereinafter referred to as former trustees or Brewery Workers Fund Trustees.)[5] These cases are before the Court on the former trustees' motion to dismiss for lack of jurisdiction.

## ISSUE

The Commissioner issued a determination letter making a favorable determination as to the qualified status of the Brewery Workers Fund as in effect prior to its merger with the Teamsters Fund. The Commissioner also determined that while a partial termination of the Brewery Workers Fund occurred before full integration of the two plans, qualification was not affected, however, because participants in the fund were fully vested in their accrued benefits to the extent funded.

Petitioners allege that, in issuing the determination letter, the Commissioner "abused his discretion and acted unreasonably and arbitrarily by not determining":

(i) that the partial termination of the Brewery Fund between January 1, 1976 and September 30, 1976 resulted in its disqualification under the Code and regulations; and,

(ii) that the disqualified Brewery Fund could not merge for Federal tax purposes with the qualified Teamsters Fund and have the merged fund qualified under section 401 of the Code; and,

(iii) that for Federal tax purposes the consolidation of the Brewery Fund with the Teamsters Fund as of December 1, 1976, pursuant to Court order, resulted in the termination and disqualification of the Brewery Fund.

---

rights and duties of the resigning Brewery Workers Fund trustees were assigned to the Teamsters trustees upon approval of the merger agreement by the Internal Revenue Service.

[5]By order, dated Mar. 7, 1986, we granted the Commissioner's motion to join the former trustees as additional parties.

The issue in these cases is whether we should exercise our jurisdiction to issue a declaratory judgment with regard to the qualification of the Brewery Workers Fund or whether we should dismiss these cases for lack of jurisdiction.

## FACTUAL BACKGROUND

### (A) *The Merger*

The facts of these consolidated cases are not in dispute. An agreement and plan of integration (the merger agreement) was entered into in 1973 between the Brewery Workers Fund and the Teamsters Fund, which provided for a merger of the two funds. Subsequent to the merger agreement, Reingold Breweries, one of the largest employer-contributors to the Brewery Workers Fund, ceased operations. This development made the merger much less attractive to the Teamsters Fund since it dramatically reduced the Brewery Workers Fund's prospective contributions to the joint plan without a proportionate reduction in the joint plan's prospective liabilities to Brewery Workers Fund participants. Consequently, counsel for the Teamsters Fund notified counsel for the Brewery Workers Fund that, in view of the Reingold closing, the Teamsters Fund trustees had voted not to proceed with the merger.

### (B) *Initial Merger Litigation*

After the Teamsters Fund notified the Brewery Workers Fund that it intended not to proceed with the merger, the Brewery Workers Fund brought suit in the New York Supreme Court, Queens County. On April 29, 1975, the Supreme Court granted the Brewery Workers Fund's motion for summary judgment. The court decreed that the merger agreement was valid, binding, and enforceable upon the parties thereto and directed the Teamsters Fund and its trustees to specifically perform the merger agreement. *Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Retirement Fund*, 49 A.D.2d 755, 374 N.Y.S.2d 590 (1975).

## (C) *The 1976 Application for a Determination*

Under the terms of the merger agreement, performance of the merger was conditioned upon Internal Revenue Service approval of the merger agreement. The New York Supreme Court, in ordering the Teamsters Fund to perform the agreement, specifically ordered the Teamsters Fund trustees to execute the documents necessary to request approval of the merger by the Internal Revenue Service pursuant to the provisions of the merger agreement. It appears that the Teamsters Fund trustees did not fully cooperate in obtaining a determination. Nevertheless, on March 8, 1976, counsel for the Brewery Workers Fund submitted to the District Director, Internal Revenue Service, Buffalo, New York, a request for a determination that the qualified and exempt status of the Teamsters Fund would not be affected by the merger and that the merger of the two funds met the requirements of the Employee Retirement Income Security Act (ERISA)[6] in that the Brewery Workers Fund would not terminate as a result of the merger.

By letter, dated September 28, 1976, the Buffalo District Director issued a favorable determination. On November 19, 1976, the Teamsters Fund requested that the determination letter of September 28, 1976, be revoked. In this regard, the Teamsters Fund claimed that it never filed an application for a determination, nor did it join with any other party in filing an application. Further, the Teamsters Fund argued that neither the trustees nor the participants in the Teamsters Fund had notice of the request for the determination until after the Internal Revenue Service issued the determination.

After several conferences, the National Office of the Internal Revenue Service issued a technical advice memorandum, dated October 25, 1978, concluding that participants in the Teamsters Fund should have received notice of the ruling request that resulted in the determination letter of September 28, 1976. The memorandum further advised that the Teamsters Fund participants should now be given notice, but that the determination letter should not be withdrawn during the period within which these parties

---

[6]Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 93 Stat. 70.

were to be afforded the opportunity to comment on the determination. Subsequently, the Teamsters Fund sent notice to its members, some of whom submitted comments with respect to the 1976 determination concerning the proposed merger. On June 9, 1979, the Internal Revenue Service ruled that its 1976 determination was proper.

## (D) *Subsequent Litigation Regarding the Merger*

The merger of the Teamsters Fund and Brewery Workers Fund has been the subject of extensive litigation in both New York State Courts and Federal Courts. This course of litigation began when the Brewery Workers Fund initially brought suit[7] complaining of the Teamsters Fund's refusal to perform the merger, and continues today in this Court and others.[8] The following is a summary of such litigation in New York and Federal Courts.

### (1) *State Court Litigation*

After the 1976 determination letter was issued, by instrument dated November 19, 1976, the Brewery Workers Fund trustees resigned effective December 1, 1976, and transferred the assets of the Brewery Workers Fund to the Teamsters Fund trustees. The Teamsters Fund trustees refused to accept the assets assigned by the Brewery Workers Fund trustees. In addition, the Teamsters Fund trustees refused to pay benefits to or accept contributions on behalf of Brewery Workers Fund participants.

The Brewery Workers Fund accordingly sought additional relief in the New York Supreme Court. On April 12, 1977, an order and supplemental judgment was entered declaring that the Brewery Workers Fund was fully integrated with

---

[7]See section B, *supra* "Initial Merger Litigation."

[8]Petitioners, in their Memorandum in Opposition to Former Brewery Trustees Motion to Dismiss, filed Feb. 20, 1987, state that a suit brought by the Brewery Workers Fund, Local 46, and various participants in the Brewery Workers Fund is currently pending in the U.S. District Court for the Eastern District of New York. Plaintiffs in that case requested that the Court temporarily and permanently enjoin the Teamsters Fund from litigating the validity of the merger and from refusing to accept contributions from certain employer-contributors. Also, plaintiffs have asked the Court to remove the trustees of the Teamsters Fund for violations of fiduciary obligations, and requested the Court to appoint a temporary receiver. In response, the Teamsters Fund has filed several counterclaims against former trustees of the Brewery Workers Fund, as well as present and former employer-contributors to that fund. According to petitioners, the Court has summarily denied the temporary restraining order and has stayed proceedings in that case pending the outcome of these consolidated cases.

the Teamsters Fund as of December 1, 1976. The order directed the Teamsters Fund to (1) accept all assets and liabilities of the Brewery Workers Fund; (2) pay benefits and accept contributions on behalf of the Brewery Workers Fund; and (3) notify Brewery Workers Fund participants of their rights and options under the merger agreement. *Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Retirement Fund*, 62 A.D.2d 1046, 404 N.Y.S.2d 158 (1978).

Even though the order and supplemental judgment was not stayed pending the outcome of the appeals, the Teamsters Fund trustees refused to comply with the order. On September 19, 1977, the Supreme Court, Queens County, accordingly found the Teamsters Fund trustees in contempt. They were ordered to purge their contempt within 5 days.

The Teamsters Fund purged the contempt in part, but failed to properly notify Brewery Workers Fund participants of their rights and options under the merger agreement. Accordingly, the Brewery Workers Fund moved to impose further sanctions for contempt. The Teamsters Fund then filed a motion to vacate the New York Supreme Court's April 29, 1975, judgment that declared the merger agreement to be valid and binding. On October 19, 1978, the New York Supreme Court granted the Brewery Workers Fund's motion for contempt sanctions and denied the Teamsters Fund's motion to vacate the April 29, 1975, judgment.

Subsequently, in January 1980, the Teamsters Fund moved for leave to renew its motion to vacate the April 29, 1975, judgment and also sought to vacate the April 12, 1977, order and supplemental judgment. By orders, dated July 21, 1980, and August 7, 1980, these motions were denied. The Appellate Division affirmed the orders without opinion. *Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Retirement Fund*, 80 A.D.2d 1005, 437 N.Y.S.2d 216 (1981), affd. 55 N.Y.2d 902, 449 N.Y.S.2d 24, 433 N.E.2d 1272 (1982). Again, on October 4, 1981, the Teamsters Fund moved for leave to renew its motion to vacate the 1975 order and judgment. The New York Supreme Court denied the motion and the Appellate

Division affirmed that order without opinion on April 11, 1983.

In connection with litigation over the validity of the merger, the Brewery Workers Fund trustees moved for enforcement of a provision of the merger agreement requiring the Teamsters Fund to indemnify the Brewery Workers Fund trustees for costs and expenses incurred in implementing the merger agreement and protecting the interests of the Brewery Workers Fund participants. The Appellate Division declared that the Brewery Workers Fund trustees were entitled to indemnification. *Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Retirement Fund*, 76 A.D.2d 876, 428 N.Y.S.2d 726 (1980).

### (2) *Federal Court Litigation*

In January 1977, active and retired members of the Teamsters Fund commenced an action in the U.S. District Court for the Western District of New York seeking a preliminary and permanent injunction against the merger of the Brewery Workers Fund and Teamsters Fund. They also sought a declaratory judgment that the merger was invalid under ERISA. The Court denied the Teamsters Fund's motion for preliminary injunction and dismissed the complaint. *Cicatello v. Brewery Workers Pension Fund*, 434 F. Supp. 950 (W.D.N.Y. 1977), affd. without published opinion 578 F.2d 1366 (2d Cir. 1978).

Also, in January 1977, the Teamsters Fund brought suit against the Pension Benefit Guarantee Corporation (PBGC) and the Brewery Workers Fund in the U.S. District Court for the District of Columbia. In that case, the Teamsters Fund sought a declaratory judgment that the merger agreement was subject to sections 208 and 1015(c) of ERISA and sought an injunction directing the PBGC to assert jurisdiction over the merger agreement and determine whether the merger was in violation of the standards set forth in ERISA. All parties filed motions for summary judgment. On appeal, the Court of Appeals affirmed the District Court's denial of the Teamsters Fund's motion for summary judgment and the granting of the motions by the Brewery Workers Fund and the PBGC for summary judgment. In doing so, the Court of Appeals held that ERISA

was not retroactive and therefore not applicable to the dispute regarding the enforceability of the merger agreement. The Court of Appeals further held that the Teamsters Fund was barred by the doctrine of res judicata from relitigating the validity of the merger. *New York State Teamsters Conference Pension and Retirement Fund v. Pension Benefit Guarantee Corp.*, 591 F.2d 953 (D.C. Cir. 1979), cert. denied 444 U.S. 829 (1979).

In September 1981, the Teamsters Fund brought suit in the U.S. District Court for the Northern District of New York against former Brewery Workers Fund trustees, former officers of Brewery Workers Delivery Employees Local Union Number 46, and former employer-contributors to the Brewery Workers Fund, alleging that improper contributions had been made on behalf of Union officers. The Court granted the defendants' motions for summary judgment, finding no evidence supporting the Teamsters Fund's allegations. *New York State Teamsters Conference Pension and Retirement Fund v. Hoh*, 554 F. Supp. 519 (N.D.N.Y. 1982).

### (E) *The 1978 Application*

On September 11, 1978, a new request for a determination was submitted on behalf of the Teamsters Fund "acting * * * as successor in interest to the Brewery Workers Pension Fund." The District Director was requested to rule that before the effective date of the merger agreement, and no later than September 30, 1976, a partial termination of the Brewery Workers Fund had occurred. Notices of the September 11, 1978, determination request were sent by the Teamsters Fund to current participants, former participants with vested benefits, and beneficiaries of deceased former participants receiving benefits in the former Brewery Workers Fund. On October 25, 1978, the District Director in Brooklyn returned the application and request of September 11, 1978, and directed the Teamsters Fund to furnish evidence that proper notice had been given to all interested parties in accordance with the technical advice memorandum issued by the National Office on that same date. The trustees of the Teamsters Fund responded that it was their position that the technical advice memorandum referred

only to the September 28, 1976, determination, and not to the determination request made on September 11, 1978. By letter, dated December 26, 1978, the Brooklyn District Director's Office again advised petitioners that it was the District Director's position that all interested parties had not been notified of the request for a determination.

### (F) *Prior Tax Court Litigation*

Thereafter, petitions for declaratory judgment under section 7476 were filed in this Court, requesting us to declare that the December 26, 1978, letter was an invalid determination by the Commissioner. We dismissed those cases on the basis that (1) the refusal of the IRS to issue a determination with respect to the qualification of a retirement plan was not reviewable by the Tax Court because the refusal was based upon the absence of evidence establishing that the party requesting the ruling had given notice to all interested parties, and (2) the December 26, 1978, letter did not constitute a determination with respect to continuing qualification upon which jurisdiction can be based under section 7476(a), and therefore, the substantive issues raised by the parties with respect to a partial termination of one of two merged plans did not arise in the context of a determination as to whether the plan was qualified.[9]

### (G) *The 1983 Application*

Thereafter, the trustees of the Teamsters Fund, acting as successor trustees of the Brewery Workers Fund, filed another application for a determination, dated September 30, 1983, with the District Director, Buffalo, New York. The District Director sought technical advice from the National Office with respect to the application. On June 1, 1984, the Teamsters Fund representatives attended a conference with the staff of the National Office to discuss the application. After the conference, a technical advice memorandum was issued to the District Director by the National Office. On February 12, 1985, the District Director issued a determina-

---

[9]*New York State Teamsters Conference Pension and Retirement Fund v. Commissioner,* T.C. Memo. 1982-593, *New York State Teamsters Conference Pension and Retirement Fund v. Commissioner,* T.C. Memo. 1982-594, and *Wenzel v. Commissioner,* T.C. Memo. 1982-595, affd. on consolidated appeal *Wenzel v. Commissioner,* 707 F.2d 694 (2d Cir. 1983).

tion letter with respect to the application filed on behalf of the Brewery Workers Fund as it existed prior to its merger with the Teamsters Fund. The determination letter, which was based on the technical advice memorandum, stated as follows:

Based on the information supplied, we have made a favorable determination regarding the qualification of the Brewery Workers Pension Plan in effect prior to the merger into the New York State Teamsters Conference Pension and Retirement Fund.

This letter also concerns your request for a determination as to whether a partial termination of the Brewery Workers Pension Plan occurred within the meaning of section 411(d)(3) of the Internal Revenue Code and the regulations thereunder between January 1, 1976 and September 30, 1976, prior to the effective date of the merger agreement of the Brewery Fund into the New York State Teamsters Conference Pension and Retirement Fund.

Based on the facts submitted, we have determined that a partial termination of the Brewery Workers Pension Fund occurred between January 1, 1976, and September 30, 1976, and before the December 1, 1976, date on which the court said the two plans were fully integrated. Even though a partial termination of the Brewery Workers plan occurred, it required no additional vesting and had no effect on the qualification of the plan due to the fact [that] participants were fully vested in their accrued benefits to the extent funded, at the time of the partial termination.

This letter relates only to the status of your plan under the Internal Revenue Code. It is not a determination regarding the effect of other Federal or local statutes.

Thereafter, petitions in the cases before us were filed.

OPINION

In order for us to exercise jurisdiction over a declaratory judgment action under section 7476, there must be an "actual controversy involving a determination by the Secretary with respect to the initial * * * or continuing qualification of a retirement plan * * * or a failure by the Secretary to make a determination with respect to such initial * * * or continuing qualification if the controversy arises from a plan amendment or plan termination." Sec. 7476(a). The former trustees allege, in part, that there is no actual controversy involved here.

The U.S. courts created under article III of the U.S. Constitution, as a matter of constitutional law, have juris-

diction only of those cases which involve an actual controversy. *Golden v. Zwickler,* 394 U.S. 103, 108 (1969); *Altvater v. Freeman,* 319 U.S. 359, 363-365 (1943); *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 239-241 (1937). Though in general the Tax Court, which was created under article I of the Constitution, may not be explicitly subject to the article III requirement of an actual controversy (see *Anthony v. Commissioner,* 66 T.C. 367 (1976), and the cases cited therein), section 7476, by its terms, makes such requirement applicable to the Tax Court in a declaratory judgment action. *Thompson v. Commissioner,* 71 T.C. 32, 38-39 (1978); see generally H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 236, 342; H. Rept. 93-1280 (Conf.) (1974), 1974-3 C.B. 415, 492. In deciding whether an actual controversy exists, we look to the standard applied to article III courts in declaratory judgment actions as set forth by the Supreme Court in *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941). In that case, the Court stated as follows:

> Basically the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co. v. Pacific Coal & Oil Co., supra* at 273; see also *Golden v. Zwickler, supra; Altvater v. Freeman, supra; Aetna Life Insurance Co. v. Haworth, supra;* H. Rept. 93-1280, *supra,* 1974-C.B. at 492.

In these cases, there are two groups of petitioners. First, there are the teamsters trustees, and second, there are the participants in the Teamsters Fund.

### (I) *The Teamsters Trustees*

Petitioners in docket number 12441-85R petition this Court in their capacities as trustees for the Teamsters Fund, and as successor trustees and plan administrator for the Brewery Workers Fund. Trustees of both the Teamsters Fund and the Brewery Workers Fund agreed to the merger, and signed the merger agreement. The Internal Revenue Service, without imposing conditions or requiring any change in the terms of the merger agreement, determined

that the merger of the two funds would not affect the existing qualified status of the Teamsters Fund. The Teamsters Fund trustees, acting as successor trustees of the Brewery Workers Fund, subsequently requested a ruling that the Brewery Workers Fund underwent a partial termination prior to the merger and that such partial termination disqualified the Brewery Workers Fund such that it could not merge with the Teamsters Fund.

Thus, we are faced with a situation where the Internal Revenue Service has determined that the plan is qualified. Trustees of the Teamsters Fund, acting as successor trustees of the Brewery Workers Fund now appeal this determination, claiming that it is adverse to them. The former trustees of the Brewery Workers Fund, respondents here, argue that this is a favorable determination and that petitioners cannot demonstrate adversity to it.

We believe that a trustee can, under certain circumstances, demonstrate adversity to a favorable determination where qualification of the plan depends upon adoption of plan amendments or conditions imposed by the Internal Revenue Service. Indeed, Congress recognized that prior to enactment of section 7476, the absence of a declaratory judgment remedy almost always caused the employer to go along with the Service, even if the employer disagreed with the Service's determination. See S. Rept. 93-383 (1974), 1974-3 C.B. 1, 192; H. Rept. 93-807, *supra*, 1974-3 C.B. (Supp.) at 341. Similarly, in declaratory judgment actions under section 7428, we have found the requisite actual controversy where an organization was granted exempt status, but on a basis different from that requested. See *Foundation of Human Understanding v. Commissioner*, 88 T.C. 1341 (1987); *Friends of the Society of Servants of God v. Commissioner*, 75 T.C. 209 (1980).[10] In each of those cases, although the Service determined that the organization was exempt from tax, it did so on the basis of an exemption that was less advantageous than that requested by the organization. In each case, the taxpayer sought tax exemption as a church. The Service, in each case, determined that the taxpayers were exempt organizations, but were not churches. We found in those cases that, although

---

[10]See also *Universal Bible Church v. Commissioner*, T.C. Memo. 1986-170.

exempt from taxation, the taxpayers, because they were not classified as churches, were subject to requirements they would not otherwise be required to meet if they had been classified as churches. *Foundation of Human Understanding v. Commissioner, supra* at 1355; *Friends of the Society of Servants of God v. Commissioner, supra.* This, we held, provided the requisite adversity for declaratory judgment.

In the present cases, the Commissioner unconditionally approved the merger agreement as drafted and as agreed to by the Teamsters Fund and Brewery Workers Fund. There is no threatened action on the part of the Service to revoke the determination of the merged plan as qualified. The Commissioner appears to have no interest in the dispute with regard to the merger agreement. He has determined that the merged funds qualify, and has neither conditioned the qualification on adoption of amendments, nor imposed any conditions to the qualification. Accordingly, there is no present threat that the Commissioner will issue a notice of deficiency.

It is clear that a real and immediate threat to a plan's qualification for special tax status is the basis for adversity intended by Congress in section 7476. The legislative history of section 7476 states that before there was a declaratory judgment remedy under the Code, the employer who had received an unfavorable ruling as to qualification would have had to put the plan into effect, make contributions, and have those contributions disallowed, before he would be able to challenge the Commissioner's determination. See S. Rept. 93-383, *supra,* 1974-3 C.B. at 191-192; H. Rept. 93-807, *supra,* 1974 C.B. (Supp.) at 341. In such a case, there was an imminent threat that a notice of deficiency would be issued. Here there is no such threat.

In *New Community Senior Citizens Housing Corp. v. Commissioner,* 72 T.C. 372 (1979), we dismissed a petition for declaratory judgment under section 7428, a provision analogous to section 7476, on a similar basis. In that case, the taxpayer requested a ruling from the Commissioner as to whether certain proposed transactions would jeopardize its continuing qualification as a section 501(c)(3) organization. The Commissioner issued a ruling that one proposed transaction would jeopardize the taxpayer's tax-exempt

status. The taxpayer, therefore, filed a petition under section 7428, seeking our review of the Commissioner's ruling. In deciding that case, we noted that "an expressed congressional purpose for the enactment of section 7428 was to provide prompt judicial review for organizations faced with the Commissioner's withdrawal of advance assurance of deductibility of contributions." *New Community Senior Citizens Housing Corp. v. Commissioner, supra* at 375. We reasoned that "The evil associated with a revocation of tax-exempt status—a loss of a deduction for contributions" was simply not present in that case. 72 T.C. at 376. Although we recognized that revocation would be consistent with the Commissioner's ruling, any such revocation was speculative. The Commissioner had ruled that the proposed transactions would jeopardize exemption, not that revocation of the exemption would necessarily follow.

Here, inasmuch as there is no present threat to the Brewery Workers Fund's qualified status, the express purpose of Congress in providing a declaratory judgment remedy under section 7476 has not been met. We find that there is no actual controversy concerning the Teamsters trustees. Indeed, the Commissioner approved the merger agreement as negotiated and agreed to by the parties. That the merger later became unattractive to the Teamsters Fund, requiring judicial enforcement of the merger contract, is a controversy not cognizable under section 7476. Accordingly, these petitioners, Teamsters Fund trustees, have not demonstrated the adversity necessary for declaratory judgment under section 7476.

### (II) *Teamsters Fund Participants*

We next consider petitioners in docket numbers 12440-85R, and 12442-85R through 12444-85R. All of these petitioners are covered participants in the Teamsters Fund.

Section 7476(b)(1) provides that "a pleading may be filed under this section only by a petitioner who is the employer, the plan administrator, [or] an employee who has qualified under regulations * * * as an interested party for purposes of pursuing administrative remedies within the Internal Revenue Service." Petitioners argue that they are interested parties within the meaning of section 1.7476-1(b), Income

Tax Regs. Section 1.7476-1(b)(5) provides that in the case of an adverse determination with respect to whether a plan termination affects continuing qualification, "all present employees with accrued benefits under the plan, all former employees with vested benefits under the plan, and all beneficiaries of deceased former employees currently receiving benefits under the plan shall be interested parties." Petitioners rely on section 1.7476-1(c)(1) of the regulations for the proposition that the status of an individual as an interested party is determined generally when notice of an application for determination is given. Thus, petitioners argue that as they were "present employees" of the Teamsters Fund at the time the 1983 application for determination was made, they are interested parties.

Clearly, the 1983 request concerned a determination with respect to the qualified status of the Brewery Workers Fund prior to the merger. Section 1.7476-1(b)(5), Income Tax Regs., makes it clear that to be an interested party, an employee must have accrued benefits (present employee), vested benefits (former employee), or be receiving benefits (beneficiary of a deceased former employee) under the plan. While petitioners may meet one of these categories with respect to the Teamsters Fund, they do not so qualify as interested parties with respect to the Brewery Workers Fund.

The legislative history of section 7476 provides that "to bring an action an individual must have been an employee of the employer during the period for which he is requesting the qualification of the plan." S. Rept. 93-383, *supra,* 1974-3 C.B. at 194-195. Petitioners, here, who are participants in the Teamsters Fund, seek a declaratory judgment with respect to the Brewery Workers Fund. Clearly they are not now, nor have they ever been, employees of any employer contributing to the Brewery Workers Fund.

Nevertheless, petitioners appear to argue that by reason of the merger, employees participating in the Teamsters Fund are interested parties with respect to the Brewery Workers Fund, despite the fact that such employees have never participated in the Brewery Workers Fund. Section 7476 makes it clear that an interested party with respect to a plan must have vested or accrued benefits, or be receiving

benefits under that plan. Petitioners do not now have, nor have they ever had, any such interests under the Brewery Workers Fund.

Our jurisdiction is statutory and cannot be enlarged by the actions of the parties. See *Freedman v. Commissioner*, 71 T.C. 564 (1979). Under section 7476, only specifically defined categories of interested parties may petition this Court for declaratory relief. Petitioners, participants in the Teamsters Fund, are not interested parties with respect to a determination as to the qualified status of the Brewery Workers Fund. We find that petitioners are statutorily barred from petitioning for declaratory relief, and therefore, lack standing to maintain this action. See *American New Covenant Church v. Commissioner*, 74 T.C. 293 (1980).[11] Accordingly, these cases must be dismissed for lack of jurisdiction.

## CONCLUSION

There is no doubt that a controversy exists here. But, we find that the controversy does not arise from a determination regarding the qualified status of a plan. Rather, the controversy arises from the merger agreement which, after ratifying, the Teamsters Fund trustees declined to perform because of changed circumstances which made the proposed merger less attractive. As previously noted, the Teamsters Fund was ordered by the New York Supreme Court to specifically perform the merger. Performance was conditioned on approval of the merger by the Internal Revenue Service. This approval was received in September 1976, and the New York State Supreme Court declared the funds fully integrated. Petitioners here have asked that we order revocation of the 1976 ruling. We are clearly without jurisdiction to do so. In this regard, we note that our jurisdiction is limited to determining whether a plan is or is not qualified. S. Rept. 93-383, *supra*, 1974-3 C.B. at 193; *Wenzel v. Commissioner*, 707 F.2d 694, 696 (2d Cir. 1983), affg. Memorandum Opinions of this Court.

The real controversy in these cases relates not to the Commissioner's determination, but to a merger contract

---

[11]See also *Jones v. Commissioner*, T.C. Memo. 1980-512.

gone sour. That is, the real controversy is between the Teamsters Fund and the Brewery Workers Fund regarding a merger agreement which includes as one of its terms a requirement that the merger agreement be approved by the Internal Revenue Service. Congress gave the Tax Court jurisdiction over controversies concerning the Commissioner's determination regarding qualified status of a plan. Clearly, the merger dispute is a question of State law (see *New York State Teamsters Conference Pension and Retirement Fund v. Pension Benefit Guaranty Corp.*, 591 F.2d 953 (D.C. Cir. 1979)), and not a matter within our jurisdiction under section 7476.

For the reasons stated herein, respondent former trustees' motion to dismiss for lack of jurisdiction will be granted.

*An appropriate order will be entered.*